## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES DONAHUE and SANDRA
M. LEIGHTON-DONAHUE,

      Plaintiffs,                          Case No. 13-10205

vs.                                        Hon. Gerald E. Rosen

FEDERAL NATIONAL MORTGAGE
ASSOCIATION and J.P. MORGAN
CHASE BANK, N.A.,

      Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ March 31, 2014 _____

PRESENT:  Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiffs James Donahue and Sandra M. Leighton-Donahue commenced this suit in

state court on or around November 26, 2012, asserting a variety of state-law claims against

Defendants Federal National Mortgage Association ("Fannie Mae") and J.P. Morgan

Chase Bank, N.A. ("Chase") arising from the November 2, 2011 foreclosure sale of

Plaintiffs' residence in Grosse Ile, Michigan.  Defendants removed the case to this Court

on January 17, 2013, citing the diverse citizenship of the parties.  *See* 28 U.S.C. § 1332(a).

In lieu of answering the complaint, Defendants have filed an August 5, 2013 motion to dismiss Plaintiffs' complaint in its entirety with prejudice. In support of this motion, Defendants contend (i) that in light of the expiration of the six-month period of redemption following the foreclosure sale of the subject property, Plaintiffs can no longer seek to overturn this sale, and (ii) that in any event, each of the four counts of Plaintiffs' complaint fails to state a valid claim for relief. On August 26, 2013, Plaintiffs filed a response in opposition to Defendants' motion, arguing primarily that they are entitled under Michigan law to challenge the foreclosure sale of their home in light of their allegations of irregularities in the process through which they sought a modification of their mortgage loan. Defendants filed a reply in further support of their motion on September 12, 2013.

Having reviewed the parties' briefs in support of and in opposition to Defendants' motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are adequately presented in these written submissions, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendants' motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Plaintiffs James Donahue and Sandra M. Leighton-Donahue obtained a loan in the amount of $204,000.00 from Washtenaw Mortgage Company to purchase the property at issue here, located at 8016 Berkshire Drive in Grosse Ile, Michigan (the

2

"Property").  Plaintiffs' promise to repay this loan is evidenced by a note, which is secured by a mortgage on the Property.  Mortgage Electronic Registration Systems, Inc. ("MERS") is identified as the mortgagee under the mortgage, as the nominee for the lender and its successors and assigns.  MERS assigned the mortgage to Defendant Chase in March of 2010, and Chase is also the servicer of the loan.

As acknowledged in their complaint, Plaintiffs "defaulted under the terms of the mortgage and foreclosure by advertisement proceedings were commenced pursuant to the terms in the Mortgage."  (Complaint at ¶ 10.)  A sheriff's sale was held on August 4, 2010, and Defendant Fannie Mae purchased the Property for $212,523,57.  (*See* Complaint at ¶ 11; Complaint, Ex. D, 8/4/2010 Sheriff's Deed.)  A suit for possession of the Property evidently was commenced in 2011, but the parties agreed to dismiss this action and expunge the sheriff's sale in light of Plaintiffs' efforts to obtain a modification of their mortgage loan.  (*See* Complaint at ¶¶ 12-13.)

According to the complaint, Defendant Chase sent a series of confusing and contradictory letters to Plaintiffs in the summer and fall of 2011 regarding their eligibility for a loan modification.  Most notably, Plaintiffs received a June 21, 2011 letter from Chase informing them that their request for a loan modification had been denied, (*see* Complaint, Ex. F, 6/21/2011 Letter), but just three days later, on June 24, 2011, Chase sent another letter to Plaintiffs stating that they had been approved to enter into a trial period plan ("TPP") under the Home Affordable Modification Program ("HAMP"), (*see* Complaint, Ex. G, 6/24/2011 Letter).  In this latter correspondence, Plaintiffs were advised

3

that "to accept this offer, you must make your first monthly 'trial period payment' in place of your normal monthly mortgage payment," and that "[a]fter all trial period payments are timely made and you continue to meet all program eligibility requirements, your mortgage would then be permanently modified." (*Id.* at 1.)

Plaintiffs do not claim to have made any of the payments called for under the TPP. Instead, they allege that a foreclosure prevention advocate contacted Chase on their behalf and was informed (i) that the June 24, 2011 approval letter was based on a prior application and outdated information, (ii) that Plaintiffs should resubmit updated information, and (iii) that no payments should be made under the TPP. (*See* Complaint at ¶ 16.) When Plaintiffs evidently heeded this advice and failed to make the TPP payments, Chase sent them a September 16, 2011 letter stating that they were "no longer eligible for HAMP according to the guidelines of the program." (Complaint, Ex. I, 9/16/2011 Letter at 2; *see also* Plaintiffs' Response, Ex. H, 9/12/2011 Letter (advising Plaintiffs that the offer of a TPP had been cancelled due to their failure to make one or more of the payments called for under this plan).)[1]

According to their complaint, Plaintiffs then were advised "[o]n very short notice" to submit yet another updated application for a loan modification, and they did so on

---

[1]As noted in Plaintiffs' response to Defendants' motion, Chase's September 16, 2011 letter again included seemingly inaccurate and contradictory information. Specifically, this letter explained that Plaintiffs were ineligible for a loan modification because their monthly housing expenses were "less than or equal to 31% of your gross monthly income," but the letter then referenced figures revealing that Plaintiffs' "housing ratio" — *i.e.,* their monthly housing expenses divided by their gross monthly income — actually exceeded this 31 percent threshold for eligibility. (*See* Plaintiffs' Complaint, Ex. I, 9/16/2011 Letter at 1.)

4

November 2, 2011.  (Complaint at ¶ 20.)  In a letter dated December 13, 2011, however, Chase denied this application, explaining that a foreclosure sale of Plaintiffs' home had been scheduled for November 2, 2011, and that Plaintiffs' application had not been received at least seven days prior to this sale as required for Chase to consider it.  (*See* Complaint at ¶ 20; *see also* Plaintiffs' Response, Ex. I, 12/13/2011 Letter.)

Consistent with this letter, a second foreclosure sale of the Property was held on November 2, 2011, and Defendant Fannie Mae again purchased the Property, this time for the price of $230,271.48.  (*See* Complaint, Ex. A, 11/2/2011 Sheriff's Deed.)  The six-month statutory redemption period expired on May 2, 2012, evidently without Plaintiffs taking any steps to redeem the Property.  Fannie Mae apparently commenced a summary eviction proceeding at some point thereafter,[2] and Plaintiffs then brought the present suit on or around November 26, 2012, asserting four state-law claims and seeking awards of legal title to the Property and damages.

### III.  ANALYSIS

**A.   The Standards Governing Defendants' Motion**

Through their present motion, Defendants seek the dismissal of Plaintiffs'

---

[2]The record does not disclose the status of this proceeding.  Plaintiffs filed a motion in the present suit seeking to enjoin a scheduled hearing in this state court proceeding, but the Court denied this motion in an order dated February 13, 2013.

5

complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can

be granted.[3]  When considering a motion brought under Rule 12(b)(6), the Court must

construe the complaint in a light most favorable to the plaintiff and accept all well-pled

factual allegations as true.  *League of United Latin American Citizens v. Bredesen*, 500

F.3d 523, 527 (6th Cir. 2007).  Yet, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and

citations omitted).  Rather, to withstand a motion to dismiss, the complaint's factual

allegations, accepted as true, "must be enough to raise a right to relief above the

speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974.  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[3]Although Defendants' motion is accompanied by certain documents — *e.g.,* the note evidencing Plaintiffs' indebtedness — that technically extend beyond the four corners of Plaintiffs' complaint and accompanying exhibits, these materials may fairly be considered "part of the pleadings," as "they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (internal quotation marks and citation omitted).  Thus, the Court may consider these materials while still deciding Defendants' motion under the standards of Rule 12(b)(6).

6

the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at

1949.

**B.      With the Expiration of the Period of Redemption, and Absent Any Allegations
         of Fraud or Irregularity in the Foreclosure Process, Plaintiffs May No Longer
         Seek to Set Aside the Foreclosure Sale of Their Home.**

As the first challenge advanced in their motion, Defendants argue that Plaintiffs'

complaint is subject to dismissal in its entirety because the principal relief sought in each

count of this complaint — *i.e.,* reversal of the November 2, 2011 sheriff's sale of the

Property and a grant to Plaintiffs of legal title to the Property — may no longer be

awarded.  In particular, Defendants cite a wealth of decisions by the Michigan courts and

the federal courts in this District recognizing that once the six-month period of redemption

has expired following the foreclosure sale of property, the former owner of the property

generally lacks a sufficient interest in the property to challenge the foreclosure.  (*See*

Defendants' Motion, Br. in Support at 7-8 (collecting cases)).  Having itself addressed this

issue on multiple occasions, the Court readily agrees that the uniform weight of the case

law defeats each of the claims asserted by Plaintiffs in this suit.

The Court begins its analysis on this point by quoting from its recent decision in

another foreclosure-by-advertisement case that addressed precisely this same issue:

> While Michigan's foreclosure by advertisement statutory scheme
> provides certain steps that the mortgagee must go through to validly
> foreclose, it also controls the rights of both the mortgagee and the mortgagor
> once the sale is completed.  *See* M.C.L. § 600.3204 *et seq*[.]; *see also
> Senters v. Ottawa Sav. Bank, FSB,* 443 Mich. 45, 50, 503 N.W.2d 639
> (1993).  In relevant part, the statute provides the mortgagor with a certain
> timeframe in which to redeem the property.  M.C.L. § 600.3240.  Once the

redemption period following the foreclosure of a property expires, a
plaintiff's rights in, and title to, the property are extinguished, and she loses
all standing to bring claims with respect to the property.  *See Piotrowski v.
State Land Office Bd.,* 302 Mich. 179, 187, 4 N.W.2d 514 (1942)
(mortgagors "lost all their right, title, and interest in and to the property at
the expiration of their right of redemption"); *see also Conlin v. Mortg. Elec.
Registration Sys., Inc.,* 714 F.3d 355, 359 (6th Cir. 2013) (citing *Piotrowski*);
*Overton v. Mortg. Elec. Registration Sys.,* 2009 WL 1507342, at *1 (Mich.
App. May 28, 2009) ("Once the redemption period expired, all of plaintiff's
rights in and title to the property were extinguished.").

*Narra v. Fannie Mae,* No. 13-12282, 2014 WL 505571, at *5 (E.D. Mich. Feb. 7, 2014)

(footnote omitted).[4]

Just as in *Narra,* 2014 WL 505571, at *5, the Court concludes here that these

principles defeat Plaintiffs' effort to overturn the foreclosure sale of their home, no matter

the legal theory under which they might seek to do so.  The sheriff's sale of the Property

occurred on November 2, 2011, and the six-month redemption period expired on May 2,

2012.  Nothing in the complaint, nor elsewhere in the record, indicates that Plaintiffs made

any attempt to redeem the Property before the expiration of the redemption period.

Accordingly, as of May 2, 2012, Defendant Fannie Mae, the purchaser at the sheriff's sale,

"became vested with all right, title, and interest in the Property."  *Narra,* 2014 WL

_____

[4]In the omitted footnote, this Court noted a split among the courts in this District as to
whether the ruling of the Michigan Court of Appeals in *Overton* "is a 'standing'-based or
'merits'-based decision."  *Narra,* 2014 WL 505571, at *5 n.5.  Likewise, in this case, Defendants
have characterized their challenge to Plaintiffs' claims as resting on a lack of "standing," (*see*
Defendants' Motion, Br. in Support at 6), but they acknowledge elsewhere in their brief the case
law questioning the accuracy of this characterization, (*see id.* at 9 n.7).  As in *Narra,* 2014 WL
505571, at *5 n.5, the Court finds it unnecessary to resolve this question here, because the
Court's analysis does not depend in any way on whether Defendants' challenge is viewed as
presenting a "standing" or a "merits" issue.

8

505571, at *5.

Although Plaintiffs propose two grounds upon which they might avoid this result, neither is persuasive.  First, Plaintiffs suggest that this Court and others have "misunderstood and misconstrued" the decision of the Michigan Court of Appeals in *Overton, supra,* in a manner that "direct[ly] contradict[s]" the Michigan Supreme Court's ruling in *Reid v. Rylander,* 270 Mich. 263, 258 N.W. 630 (1935).  (*See* Plaintiffs' Response Br. at 12.)  As a threshold matter, however, the Michigan courts, the federal courts of this District, and the Sixth Circuit Court of Appeals all have continued to follow *Overton* in a plethora of decisions, citing it as part of a line of Michigan court rulings — including the ruling of the Michigan Supreme Court in *Piotrowski, supra,* 4 N.W.2d at 517 — holding that a mortgagor's rights in and title to property are extinguished upon the expiration of the redemption period, and that once this period has passed, a mortgagor may only seek to set aside a foreclosure sale upon a clear showing of fraud or irregularity.  *See, e.g., Kheder v. Seterus, Inc.,* No. 308227, 2013 WL 1286020, at *9 (Mich. Ct. App. March 28, 2013); *Awad v. General Motors Acceptance Corp.,* No. 302692, 2012 WL 1415166, at *3-*4 (Mich. Ct. App. Apr. 24, 2012); *Conlin,* 714 F.3d at 359 & n.3; *Rishoi v. Deutsche Bank National Trust Co.,* No. 13-1119, __ F. App'x __, 2013 WL 6641237, at *3-*4 (6th Cir. Dec. 17, 2013); *El-Seblani v. IndyMac Mortgage Services,* No. 12-1046, 510 F. App'x 425, 428-29 (6th Cir. Jan. 7, 2013); *Narra,* 2014 WL 505571, at *5 & n.5; *Whitehead v. Federal National Mortgage Ass'n,* No. 12-13840, 2013 WL 5353050, at *3-*5 (E.D. Mich. Sept. 24, 2013); *Pettiford v. J.P. Morgan Chase Bank, N.A.,* No. 12-11349, 2013

9

WL 3724788, at *2 (E.D. Mich. July 15, 2013); *Adams v. Wells Fargo Bank, N.A.,* No. 11-

10150, 2011 WL 3500990, at *3 (E.D. Mich. Aug. 10, 2011).  This Court is in good

company, then, in believing that *Overton* remains an accurate statement of Michigan law.

      In any event, Defendants correctly point out that *Overton* and *Reid* are fully

reconcilable as they apply to the circumstances presented here.  *Reid* holds, in pertinent

part, that the validity of a foreclosure sale "may be tested in a summary proceeding [for

possession] based thereon."  *Reid,* 258 N.W.2d at 631.  The present suit, of course, is not a

summary proceeding for possession; rather, it appears from the record that Defendant

Fannie Mae has commenced such a proceeding for possession of the Property in a

Michigan district court.  The Court need not (and does not) decide what sorts of challenges

might be available to Plaintiffs in the state court proceeding, or what sort of showing

Plaintiffs must make to sustain such a challenge.  What is relevant here — and what

*Overton* and the other above-cited cases uniformly address — is the showing Plaintiff

must make in this action to quiet title (as opposed to a summary proceeding for

possession) in order to set aside the foreclosure sale of the Property after the expiration of

the redemption period.

      Turning to this question, Plaintiffs observe, and Defendants acknowledge, that the

case law recognizes at least some (albeit narrow) circumstances under which a former

property owner may challenge a foreclosure sale after the expiration of the redemption

period.  In particular, "Michigan courts have held that once the statutory redemption

period lapses, they can only entertain the setting aside of a foreclosure sale where the

mortgagor has made a clear showing of fraud, or irregularity." *Conlin,* 714 F.3d at 359 (internal quotation marks and citations omitted); *see also Narra,* 2014 WL 505571, at *5. Moreover, "not just any type of fraud will suffice. Rather, the misconduct must relate to the foreclosure procedure itself." *Conlin,* 714 F.3d at 360 (internal quotation marks, alteration, and citations omitted).

Although Plaintiffs assert in conclusory fashion that their "complaint alleges irregularities or fraud," (Plaintiffs' Response Br. at 12), the case law uniformly holds that allegations of the sort made by Plaintiffs here are insufficient to support a challenge to a foreclosure sale after the expiration of the redemption period. First and foremost, Plaintiffs point to their allegations of Defendants' purported non-compliance with a Michigan statutory scheme, Mich. Comp. Laws § 600.3205a *et seq.,* that establishes a process through which a borrower may be considered for a mortgage loan modification. Specifically, Plaintiffs allege that Defendant Chase (i) sent inaccurate, confusing, and contradictory correspondence to Plaintiffs regarding their request for a loan modification, (ii) verbally advised Plaintiffs' foreclosure prevention advocate that Plaintiffs should not make any payments under the trial period plan ("TPP") offered in one of Chase's letters, (iii) advised Plaintiffs that their loan modification documents had not been received, even after these materials had been sent several times, (iv) assured Plaintiffs that their loan modification was under review when it was not, (v) failed to provide the calculations upon which Chase's denial of Plaintiffs' request for a loan modification was based, and (vi) denied this request without completing the loan modification process mandated by the

11

statute.  In Plaintiffs' view, the statutory process for seeking a loan modification is part and parcel of the larger statutory scheme governing foreclosure by advertisement, and it follows that a violation of the loan modification process qualifies as the requisite fraud or irregularity that permits a challenge to a foreclosure sale after the expiration of the redemption period.

As a initial matter, however, Defendants observe that the allegations of Plaintiffs' complaint fail to trigger the application of Michigan's statutory scheme for seeking a loan modification.  Under Mich. Comp. Laws § 600.3205a(1)(c), before a foreclosing party may proceed with a foreclosure sale, it must serve a written notice on the borrower that, *inter alia,* designates an agent with the authority to enter into a loan modification agreement on behalf of the foreclosing party.[5]  This statutory scheme further provides that the borrower must contact and work with this designated agent to pursue a loan modification.  *See* Mich. Comp. Laws §§ 600.3205a(1)(d)-(g), 600.3205b, 600.3205c(1).  As Defendants point out, Plaintiffs' complaint lacks any allegations that they contacted the designated agent identified in Chase's notice of the scheduled November 2, 2011 sheriff's sale; instead, Plaintiffs allege that they contacted Chase directly.  (*See* Complaint at ¶¶ 16-17, 19.)  Thus, even assuming that a violation of the Michigan statutory scheme for mortgage loan modifications could qualify as the fraud or irregularity needed to challenge

---

[5]According to the November 2, 2011 sheriff's deed, Defendant Chase provided the requisite notice under this statute, designating Orlans Associates, P.C. as the agent with the authority to enter into a loan modification agreement with Plaintiffs.  (*See* Defendants' Motion, Ex. C, 11/2/2011 Sheriff's Deed at 2.)

a foreclosure sale after the expiration of the redemption period, Plaintiffs' complaint fails

to allege a lack of compliance with this statutory scheme.[6]

Moreover, this Court and others have concluded that deviations from the Michigan

statutory scheme for exploring a loan modification do not provide a basis for setting aside

a sheriff's sale.  As this Court explained in *Narra,* 2014 WL 505571, at *6, for example,

"a borrower's sole relief for a purported violation of the loan modification statutes is to

seek to convert the foreclosure sale to a judicial foreclosure."  Numerous other decisions

in this District are in accord on this point.  *See, e.g., Pettiford,* 2013 WL 3724788, at *3-

*4; *Bragg v. JP Morgan Chase Bank,* No. 12-12486, 2012 WL 5383138, at *5 (E.D. Mich.

Nov. 1, 2012); *Adams,* 2011 WL 3500990, at *4; *Stein v. U.S. Bancorp,* No. 10-14026,

2011 WL 740537, at *10 (E.D. Mich. Feb. 24, 2011).[7]  Likewise, the Sixth Circuit has

observed that a borrower "misse[s] the boat" by appealing to alleged violations of Mich.

Comp. Laws § 600.3205c as a basis for setting aside a foreclosure sale that has already

---

[6]It also is worth noting that Plaintiffs' allegations concerning anomalies in the loan modification process are not especially indicative of fraud that would permit a challenge to the foreclosure sale of the Property after the expiration of the redemption period.  Instead, Plaintiffs complain that Defendant Chase sent confusing and inconsistent correspondence regarding the loan modification process, that two separate groups within Chase were working on the matter in an uncoordinated fashion, and that Chase representatives repeatedly asked Plaintiffs to resubmit documentation that had already been provided.  While these allegations certainly are suggestive of negligence and a lack of competence in Chase's handling of the loan modification process, it is doubtful that they rise to the level of fraud.

[7]Notably, in two of these cases, *Pettiford* and *Bragg,* the plaintiffs were represented by the same attorney who has appeared on behalf of Plaintiffs in this case, and these two cases featured identical claims and materially indistinguishable allegations to those advanced in the present suit.

occurred, since the statute, "when triggered, allows plaintiffs to enjoin a [pending] foreclosure by advertisement and convert it to a judicial foreclosure." *Smith v. Bank of America Corp.,* No. 11-1406, 485 F. App'x 749, 755 (6th Cir. June 18, 2012); *see also Block v. BAC Home Loans Servicing, L.P.,* No. 12-1955, 520 F. App'x 339, 340-41 (6th Cir. March 26, 2013).  Against this uniform weight of authority, Plaintiffs have failed to identify any case law that would permit a challenge to a foreclosure sale to go forward after the expiration of the redemption period under facts or circumstances akin to those alleged here.

    Plaintiffs fare no better with their remaining examples of alleged fraud or irregularities in the foreclosure process.  Specifically, Plaintiffs allege that the individual who signed the statement of compliance accompanying the November 2, 2011 sheriff's deed lacked personal knowledge of the facts asserted in this statement, and that this individual "may have signed the affidavit outside the presence of a notary public," practices Plaintiffs characterize as "robo-signing."  (Complaint at ¶¶ 27-28.)  Yet, as another court in this District observed under similar facts, "[t]he plaintiffs' allegation that the affidavits may have been signed outside the presence of the notary is belied by the face of the affidavits themselves, which are signed by a notary." *Moss v. Wells Fargo Bank, N.A.,* No. 11-13249, 2012 WL 1050069, at *6 (E.D. Mich. March 28, 2012).  Similarly, the Sixth Circuit has held that allegations of the sort put forward here — *e.g.,* that an individual "may have" signed an affidavit outside the presence of a notary — are too speculative to "survive Michigan's requirement that plaintiffs plead allegations of fraud or

14

mistake with particularity." *Block,* 520 F. App'x at 340 (internal quotation marks and citation omitted).  In addition, Defendants correctly point out that the challenged affidavits are not mandatory prerequisites to a foreclosure sale, but merely afford the foreclosing party the opportunity to create presumptive evidence of the facts set forth in the affidavits. *See Moss,* 2012 WL 1050069, at *7 (citing Mich. Comp. Laws §§ 600.3204, 600.3256).  It follows that any purported defects in these affidavits would not undermine the validity of a sheriff's sale.[8]

Finally, even assuming Plaintiffs had successfully alleged fraud or irregularity in the foreclosure process that might overcome their failure to act within the redemption period, the Michigan Supreme Court recently held that such "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio.*"  *Kim v. JPMorgan Chase Bank, N.A.,* 493 Mich. 98, 825 N.W.2d 329, 337 (2012).  The Court further explained that to set aside a foreclosure sale on the basis of such a defect or irregularity, a plaintiff must show that he was prejudiced by the defendant's failure to comply with the foreclosure statute, and that "to demonstrate such prejudice," the plaintiff "must show that [he] would have been in a better position to preserve [his] interest in the property absent [the] defendant's noncompliance with the statute."  *Kim,* 825 N.W.2d at 337 (footnote with citations omitted); *see also Conlin,* 714 F.3d at 361-62.

---

[8] Notably, Plaintiffs' brief in response to Defendants' motion is silent as to the matter of "robo-signing."  It thus appears that Plaintiffs have abandoned any effort to explain how allegations of this practice, even if proven, would rise to the level of fraud or irregularity that could sustain a challenge to the sheriff's sale of the Property.

15

As Defendants rightly observe, Plaintiffs have failed to identify any prejudice they suffered as a result of the purported fraud and irregularities alleged in their complaint — *i.e.,* deficiencies in the loan modification process and "robo-signing" of affidavits. As to their claim of defects in the loan modification process, Plaintiffs notably fail to allege that they were improperly denied a loan modification for which they were eligible under the Michigan statutory scheme, and they further acknowledge, at least implicitly, that they failed to comply with the terms of the TPP offered to them by Defendant Chase. Under this record, even if Chase had been more forthcoming, accurate, and clear in its communications with Plaintiffs regarding their request for a loan modification, it would be a matter of pure speculation to conclude that negotiations comporting with the Michigan statutory scheme governing the loan modification process would have resulted in a modified payment plan that Plaintiffs deemed satisfactory, or that Plaintiffs necessarily would have complied with such a plan. *See, e.g., Jabari v. Fannie Mae,* No. 13-1699, __ F. App'x __, 2014 WL 541031, at *2 (6th Cir. Feb. 11, 2014) (finding that the plaintiffs' allegations of a "sloppy mortgage process" did not establish prejudice because the plaintiffs nonetheless "attempted to modify the mortgage" and this was "all they could have done"); *Pettiford,* 2013 WL 3724788, at *4 (holding that the plaintiff had failed to "plead facts to suggest that she suffered prejudice as a result of the alleged failure to comply with section 600[.]3205c in that she does not allege that she qualified for a loan modification and her Complaint is devoid of facts suggesting that she would have been in a better position to preserve her interest in the property absent defendants' alleged non-

16

compliance with the statute").

Nor have Plaintiffs identified any prejudice resulting from Defendants' alleged robo-signing of affidavits. As noted earlier, Plaintiffs' response to Defendants' motion is wholly silent as to "robo-signing," and thus does not even attempt to suggest how this practice might have impaired their opportunity to achieve a loan modification or otherwise avoid a foreclosure sale of the Property. Accordingly, Plaintiffs may not go forward with their effort to overturn this foreclosure sale, both because they have failed to allege the requisite fraud or irregularity that would permit them to challenge this sale after the expiration of the six-month redemption period, and for lack of allegations that they were prejudiced by any alleged defects in Defendants' compliance with Michigan's foreclosure and loan modification statutes. Moreover, because the relief sought under each count of Plaintiffs' complaint — most notably, a grant of legal title to the Property — is dependent upon their success in overturning the foreclosure sale of the Property, it follows that Plaintiffs' complaint is subject to dismissal in its entirety.

**C.    Plaintiffs' Allegations Fail as a Matter of Law to Support Any of the Theories of Recovery Advanced in Their Complaint.**

Although the Court has determined that Plaintiffs' complaint must be dismissed in light of their failure to take any action challenging the foreclosure sale of the Property during the six-month redemption period, Defendants argue in the alternative that each of the four counts of Plaintiffs' complaint fails to state a claim upon which relief can be granted. As discussed briefly below, the Court agrees.

17

As noted earlier, in both *Pettiford* and *Bragg, supra,* the plaintiffs were represented by the same counsel who has appeared on Plaintiffs' behalf in this case, and the complaints in each of those cases asserted the same causes of action and contained similar allegations to those advanced by Plaintiffs here. Because the complaints in those cases were deemed subject to dismissal for failure to state a claim, and because the Court is persuaded by the analysis in those cases, it may move rather quickly through its evaluation of Plaintiffs' complaint in this case, relying to a considerable extent on the holdings in *Pettiford* and *Bragg.*

In the first count of their complaint, Plaintiffs seek to quiet title to the Property. To secure this relief, Plaintiffs must "properly allege [their] ownership interest in the property," and must also allege "facts showing a superior interest in the property." *Bragg,* 2012 WL 5383138, at *3. For the reasons outlined earlier, Plaintiffs lack the requisite ownership interest in the Property, in light of the foreclosure sale and the expiration of the redemption period, and in light of their failure to allege fraud or irregularity that would allow them to challenge this foreclosure sale. Moreover, "[P]laintiffs do not contest that they failed to pay and defaulted on the loan." *Bragg,* 2012 WL 5383138, at *3. Consequently, Count I of the complaint is subject to dismissal for failure to state a claim.

The second count of Plaintiffs' complaint asserts a claim of unjust enrichment. Yet, when faced with the arguments in Defendants' motion as to why this claim should be dismissed, Plaintiffs failed to address any of these points in their response brief, or even so much as mention their claim of unjust enrichment. Thus, the Court concludes that

18

Plaintiffs have abandoned this claim.  In any event, Plaintiffs have not pled "any facts showing [Defendants] w[ere] unjustly enriched or received a benefit from plaintiffs," *Bragg,* 2012 WL 5383138, at *5, and their "claim of unjust enrichment cannot stand where the relationship between the parties to a dispute is governed by a contract," *Pettiford,* 2013 WL 3724788, at *4.

In Count III of their complaint, Plaintiffs allege that Defendants violated various terms of Mich. Comp. Laws § 600.3205c.  As discussed earlier, however, Plaintiffs' complaint lacks the allegations necessary to demonstrate a lack of compliance with the Michigan statutory scheme governing loan modifications; most notably, Plaintiffs have not alleged that they contacted the representative designated by Defendant Chase to pursue a loan modification.  *See Whitehead,* 2013 WL 5353050, at *6 ("The conclusory allegation that the defendant failed to adhere to [§ 600.3205c]  by failing to modify the plaintiff's mortgage has been repeatedly deemed insufficient to state a viable claim.").  Moreover, even if Plaintiffs had "allege[d] sufficient facts demonstrating violations of section 600.3205c, the statute does not provide the relief Plaintiff[s] request[]," but instead merely permits a borrower to convert a foreclosure by advertisement into a judicial foreclosure proceeding.  *Pettiford,* 2013 WL 3724788, at *3-*4.  In addition, and as explained earlier, Plaintiffs have failed to allege any harm they suffered as a result of any purported lack of compliance with § 600.3205c.  For all of these reasons, this claim is subject to dismissal.

Finally, Count IV of Plaintiffs' complaint asserts a claim of a "deceptive act" or an "unfair practice."  As explained in *Pettiford,* 2013 WL 3724788, at *5, this is not a

19

"recognized cause[] of action under Michigan law," and Plaintiffs have failed to identify any authority to the contrary.  To the extent that Plaintiffs mean to pursue a claim of misrepresentation or fraud in this count of their complaint, the allegations in support of this claim "do not meet the minimum pleading requirements" for this theory of recovery. *Bragg,* 2012 WL 5383138, at *5.  Consequently, this claim, like the others advanced in Plaintiffs' complaint, is subject to dismissal for failure to state a claim.[9]

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' August 5, 2013 motion to dismiss (docket #14) is GRANTED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 31, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

---

[9]In their response to Defendants' motion, Plaintiffs suggest in passing that they should be permitted to "amend [their] pleadings if the court deems necessary."  (Plaintiffs' Response Br. at 18.)  Yet, they have utterly failed to propose or describe any amendments they might make to their complaint that could overcome the various defects identified in Defendants' motion and found by the Court in the present opinion.  Against this backdrop, the Court readily concludes that Plaintiffs are not entitled to amend their complaint, as any amendment would surely be futile.  *See Miller v. Calhoun County,* 408 F.3d 803, 817 (6th Cir. 2005) ("A court need not grant leave to amend . . . where amendment would be futile." (internal quotation marks and citation omitted)).